# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Mario D. Blue,<br>                Plaintiff,<br>v.<br>Factual Data, Inc.,<br>                Defendant. | Case No. 1:23-cv-01182 |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Not quite two years ago, Judge Polster ruled that Plaintiff "Mario D. Blue is also ENJOINED from filing any new lawsuits or other documents in the Northern District of Ohio without first seeking and obtaining leave to do so." *See Blue v. CSEA*, Case No. 1:20-cv-02423, ECF No. 7, at 1 (N.D. Ohio Sept. 29, 2021).

Rather than seeking this Court's leave to file a new lawsuit against Factual Data, Plaintiff filed suit in the Cuyahoga County Court of Common Pleas, which has not yet imposed a similar injunction upon him. Factual Data removed the suit to this Court and has moved to dismiss it. Factual Data's motion should be granted, and Plaintiff's Complaint should be dismissed, for the reasons that follow.

## I.      SUMMARY OF ARGUMENT

Plaintiff's Complaint alleges that because Factual Data provided information from Experian, Equifax, and Trans Union to PNC Bank, and because Factual Data did not change that information when he asked it to do so, Factual Data libeled him and violated the Fair Credit Reporting Act, 15 U.S.C. § 1601 *et seq.*

Plaintiff's Complaint should be dismissed, because it does not state a claim for which relief may be granted. FRCP 12(b)(6).

Plaintiff cannot state a libel claim for which relief may be granted, because the Fair Credit Reporting Act pre-empts common law claims "in the nature of defamation, invasion of privacy, or negligence." 15 U.S.C. § 1681h(e).

Plaintiff cannot state an FCRA claim for which relief may be granted, because under the FCRA, Factual Data acted as a "reseller" of information from Experian, Equifax, and Trans Union to PNC Bank, and the FCRA does not require resellers to correct the information that Experian, Equifax, and Trans Union had on file about Plaintiff.

## II.     SUMMARY OF FACTS AND ALLEGATIONS

On February 6, 2023, Plaintiff applied to PNC Bank to prequalify for a mortgage, and PNC Bank obtained a credit report about him from Factual Data. ECF 1-1 at 17-23.

Factual Data's February 6, 2023 credit report did not provide PNC Bank with Factual Data's own information about Plaintiff. Rather, Factual Data obtained information from Plaintiff's credit file at Trans Union and resold it to PNC Bank. *See* ECF 1-1 at 17 (showing Plaintiff's Trans Union credit score); *see also id*. at 19-21, 23 (showing "TRU" as the source of each item of information on the February 6, 2023 credit report).

When Factual Data sent a copy of this February 6, 2023 credit report to Plaintiff, it explained to him that "Factual Data provides credit information from Consumer Reporting Agencies (CRAs) [like Trans Union] to its clients," and that "Factual Data does not maintain a database of consumer information." *Id*. at 9.

On February 14, 2023, Plaintiff wrote to Factual Data and disputed the Trans Union information that had appeared on Factual Data's February 6, 2023 credit report. ECF 1-1 at 6-28. Plaintiff listed seven items of information that he claimed were not accurate, including a record of a Chapter 7 Bankruptcy Discharge and six (6) accounts with creditors. *Id*. at 7. He claimed that pursuant to the Fair Credit Reporting Act at "15 U.S.C. § 1681(3)(4)," Factual Data had an obligation to "perform a thorough investigation and to delete the listed inaccurate information and accounts from my consumer report." *Id*. He gave Factual Data thirty days – "as required under federal law" – to respond. *Id.; see also* 15 U.S.C. § 1681i (the FCRA provision which requires consumer reporting agencies to reinvestigate consumer disputes and to respond within 30 days).

Without waiting for that 30-day period to expire, Plaintiff once again approached PNC Bank about a mortgage, and on March 8, 2023, PNC Bank obtained another credit report about Plaintiff from Factual Data. *Id*. at 40-53.

As before, Factual Data did not provide its own information about Plaintiff to PNC Bank. Rather, Factual Data obtained information about Plaintiff from the three nationwide consumer reporting agencies (NCRAs), namely Experian, Equifax, and Trans Union, and Factual Data then resold the NCRAs' information about Plaintiff to PNC Bank. *Id*. at 40 (showing Plaintiff's Experian, Equifax, and Trans Union credit scores); *see also id*. at 41-53 (showing "EFX" for Equifax, "XPN" for Experian, and "TRU" for Trans Union, when these NCRAs were the source of an item of information on the March 8, 2023 credit report about Plaintiff).

When Factual Data sent a copy of the March 8, 2023 credit report to Plaintiff, it once again explained that it had provided PNC Bank with the NCRAs' information and not its own. Factual Data's cover letter again stated that "Factual Data provides credit information from Consumer Reporting Agencies (CRAs) to its clients," and that "Factual Data does not maintain a database of consumer information." ECF 1-1 at 31.

In response, Plaintiff sent Factual Data his "Dispute Notice Number Two," in which he once again cited the Fair Credit Reporting Act – this time, at 15 U.S.C. § 1681s-2 – as a basis to demand that Factual Data "thoroughly investigate and delete the listed inaccurate information and accounts from my consumer report." *Id*. at 30.

On April 28, 2023, Plaintiff sent Factual Data a "Final Dispute Notice." *Id*. at 63-91. On this occasion, he once again claimed that the NCRAs' information, as it had appeared in Factual Data's March 8, 2023 credit report to PNC Bank, had not been changed and was still inaccurate. *Id*. at 63.

As this memorandum will show, Factual Data could not and did not change the information that Experian, Equifax, and Trans Union had stored in their credit files about him. But Plaintiff appears to believe that Factual Data could and should have done this – indeed, that the Fair Credit Reporting Act required Factual Data to do it. So, after Factual Data did not respond to his three disputes in the way that he wanted it to respond, Plaintiff filed this lawsuit.[1]

---

[1] One week before Plaintiff filed this lawsuit against Factual Data, he filed separate lawsuits against Experian, Equifax, and Trans Union, each of which claims that they failed to change the information which he disputed directly with them and indirectly with Factual Data. See Cuyahoga County Case Nos. CV-23-978840 (*MARIO D BLUE v EXPERIAN*); CV-23-978841 (*MARIO D BLUE vs. TRANSUNION LLC*); CV-23-978842 (*MARIO D BLUE v EQUIFAX INFORMATION SERVICES LLC*).

Plaintiff calls his initial pleading a "Libel Complaint." ECF 1-1 at 2-3. But Plaintiff's Complaint is centered on dispute notices which reference the federal Fair Credit Reporting Act, so in alleging that Factual Data "failed to comply" with his requests, he is attempting to plead both a common law libel claim against Factual Data, and a claim that Factual Data violated the FCRA. *Id.*

### III.  ARGUMENT

**1.  Plaintiff's libel claim is pre-empted by the Fair Credit Reporting Act.**

The Fair Credit Reporting Act's provision at 15 U.S.C. § 1681h(e) pre-empts common law claims "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency." There is a limited exception: if Plaintiff can show that Factual Data furnished "false information … with malice or willful intent to injure" him, these common law claims are not pre-empted. *Id.*

A review of Plaintiff's "Libel Complaint" will confirm that Plaintiff's allegations are pre-empted by 15 U.S.C. § 1681h(e) and do not fall within the limited exception for malice or willful intent to injure.

First, Plaintiff's allegation that there is "libel being committed by the defendant" (Exhibit A at 3) is a claim "in the nature of defamation." As this Court has previously explained, "Written defamation is known as libel." *Mawaldi v. St. Elizabeth Health Center*, 381 F. Supp. 2d 675, 688 (N.D. Ohio 2005).

By alleging that Factual Data engaged in libel, Plaintiff has alleged a claim "in the nature of defamation, invasion of privacy, or negligence" against Factual Data for its reporting of information, and the allegation is pre-empted by the FCRA. 15 U.S.C. § 1681h(e).

Second, Plaintiff does not and cannot allege that when Factual Data provided information from Experian, Equifax, and/or Trans Union to PNC Bank, Factual Data gave PNC Bank "false information [] with malice or willful intent to injure him." *Id*. A credit reporting agency only furnishes information with malice or willful intent to injure if it "knows [the information] is false or . . . acts in reckless disregard of its truth or falsity.'" *Torrance v. Firstar*, 529 F. Supp. 2d 836, 844 (S.D. Ohio 2007).

To state a libel claim that survived the FCRA'S pre-emption clause at § 1681h(e), Plaintiff would have to allege that when PNC Bank ordered its credit reports, Factual Data knew that the information that Experian, Equifax, and Trans Union had in their credit files for Plaintiff was "false," but Factual Data nevertheless provided it to PNC Bank "with malice or willful intent to injure" Plaintiff.

Plaintiff has not pleaded, and cannot plead, any facts to suggest that anything like this happened. *Cf. Torrance v. Equifax, Inc*., No. 1:07-cv-054, 2008 U.S. Dist. LEXIS 140455, at *6 (S.D. Ohio May 30, 2008) (granting a motion to dismiss a libel claim, on the basis that a *pro se* plaintiff's belief that when the defendants reported his prior bankruptcy, they acted with malice, "is insufficient to state an FCRA claim, and does not constitute malicious conduct").

Plaintiff's own exhibits show that when PNC Bank ordered credit reports about Plaintiff, Factual Data gathered information from Experian, Equifax, and Trans Union and provided it without further comment.  ECF 1-1 at 17-23, 40-53.  Plaintiff's own exhibits therefore show that Plaintiff's claims for libel are pre-empted by the FCRA at § 1681h(e) and should be dismissed with prejudice.

**2. Plaintiff cannot state a reinvestigation claim against Factual Data under 15 U.S.C. § 1681i(a), because Factual Data is a "reseller" under 15 U.S.C. § 1681a(u) that falls within the reinvestigation exception at 15 U.S.C. § 1681f.**

Plaintiff's Complaint cites to and attaches three dispute notices that he sent to Factual Data before filing suit.  The first two of them referenced a provision of the Fair Credit Reporting Act as a basis for asking Factual Data to correct the information in its credit reports.  ECF 1-1 at 7 (Plaintiff's first dispute, which he made "pursuant to, 15 U.S.C. § 1681(3)(4)") and at 30 (Plaintiff's second dispute, which he made "pursuant to, 15 U.S.C. § 1681s-2(a)(1)(B)(i)(ii)").

Neither of the FCRA provisions that Plaintiff cited in his disputes required Factual Data, or any other consumer reporting agency, to correct the information in its credit reports.  The first provision, at "15 U.S.C. § 1681(3)(4)," is the FCRA's preamble: it explains why Congress enacted the FCRA, but it does not impose any specific duties on Factual Data or anyone else.  The second provision, at "15 U.S.C. § 1681s-2(a)(1)(B)(i)(ii)," pertains to "furnishers" – namely, the creditors that provide information about Plaintiff to Experian, Equifax, and Trans Union.

However, if the Court reads these two disputes in the light most favorable to Plaintiff, it may find that Plaintiff was attempting to allege a claim under 15 U.S.C. § 1681i, which requires consumer reporting agencies to reinvestigate consumer disputes of the information in their credit files and, within thirty (30) days, to respond by affirming, modifying, or deleting it.

But even if Plaintiff's dispute notices were attempts to support a claim against Factual Data under 15 U.S.C. § 1681i, Plaintiff has not pleaded and cannot plead any facts to support such a claim.

The FCRA provision at 15 U.S.C. § 1681i requires consumer reporting agencies to reinvestigate disputed information and then to "record the current status of the disputed information, or delete the item from the *file*" that it has about the person who disputed it. 15 U.S.C. § 1681i(a)(1)(A). The term "file" means "all of the information on that consumer recorded and retained by a consumer reporting agency." 15 U.S.C. § 1681a(g).

Experian, Equifax, and Trans Union each have a "file" about Plaintiff which contains the information that they store and can use to create credit reports about him.

In contrast, Factual Data is what the FCRA calls a "reseller" – namely, an entity that "assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies [*i.e.*, Experian, Equifax, and Trans Union] concerning any consumer [*i.e.*, Plaintiff] for purposes of furnishing such information to any third party [*i.e.*, PNC Bank]" and that "does not maintain a database of the assembled or merged information from which new consumer reports are produced." 15 U.S.C. § 1681a(u).

Plaintiff's own exhibits show that Factual Data acted as a "reseller": it gathered information from other consumer reporting agencies (namely Experian, Equifax, and Trans Union) and provided it to PNC Bank. ECF 1-1 at 9, 31; *see also id*. at 17-23 (reselling information from Trans Union, identified as "TRU," to PNC Bank), 40-53 (reselling information from Experian, Equifax, and Trans Union, identified as "XPN," "EFX," and "TRU," to PNC Bank).

As a reseller, Factual Data did not have a "file" on Plaintiff that it could reinvestigate and update, so the FCRA's reinvestigation provision at § 1681i(a) did not apply to it. Rather, the FCRA has a special reseller provision at 15 U.S.C. § 1681i(f) which indicates that Factual Data is "exempt from the requirements of" § 1681i(a), and that when Factual Data receives a consumer's dispute of another agency's information, its only duty is to forward that dispute to the source of the disputed information (i.e., Experian, Equifax, or Trans Union) and then to relay that source's response back to the consumer. *See* 15 U.S.C. §§ 1681i(f)(2)(B)(ii), 1681i(f)(3)(B).

In short, to state an FCRA claim against Factual Data, Plaintiff would have to plead facts which show that: 1) after he sent his first and second dispute notices to Factual Data, Factual Data did not forward those dispute notices to Experian, Equifax, and Trans Union and/or did not relay their responses back to Plaintiff; and 2) Factual Data's alleged failure to shepherd his dispute notices to the NCRAs and back caused him harm.

Plaintiff has not alleged and cannot allege any facts to suggest that anything like this happened. If anything, the fact that he has filed separate lawsuits against Experian, Equifax, and Trans Union indicates that: 1) each of them received and responded to not

only the disputes that they received indirectly from Factual Data but also disputes which they received directly from Plaintiff himself; and 2) none of them responded by changing any of the information in their files, which means that Plaintiff would have experienced the same result (an unchanged credit file) whether he had contacted Factual Data or not.

In summary, Plaintiff has not stated and cannot state an FCRA claim for which relief may be granted. Plaintiff's Complaint should be dismissed with prejudice.

### 3. Plaintiff has not pleaded any facts to show inaccuracy or harm.

Plaintiff's Complaint alleges that Factual Data engaged in libel and violated the FCRA by failing to correct inaccurate information in its consumer reports to PNC Bank. Factual Data's defenses to these allegations (namely, that the libel claim is pre-empted, and that the FCRA claim fails because Factual Data is a reseller) do not require the Court to determine whether the information in Plaintiff's consumer reports was inaccurate. But the Court may wish to consider that issue before issuing a decision.

If it does, Factual Data respectfully submits that the Court should find that: i) Plaintiff has done nothing to show anyone that there was inaccurate information in the consumer reports about him; and ii) there is no reason to believe that Plaintiff would have obtained a mortgage even if Experian, Equifax, and Trans Union had changed the information that Plaintiff (directly, through disputes that he sent to them, and indirectly, through disputes that he sent to Factual Data) asked them to change.

First, Plaintiff disputed seven items of information that appeared on his credit reports, including a record of his 2018 bankruptcy discharge. ECF 1-1 at 7; *see also id*. at 30, 63. Plaintiff did not explain why he thought that this information was inaccurate. *Id*.

The lack of detail in Plaintiff's disputes, plus the limited information available at the pleadings stage, makes it impossible to determine whether the credit account information that Plaintiff disputed was inaccurate.

But the Court can find that Plaintiff had no basis to dispute the bankruptcy information in his credit report. Specifically, Plaintiff disputed an item which he described as "Bankruptcy Chap 7 – Disc, Acct #: 1812590." ECF 1-1 at 7. Factual Data's credit reports to PNC Bank showed that, according to Trans Union, Plaintiff had filed for Chapter 7 bankruptcy in April 2018 and received a discharge in August 2018. *Id*. at 20, 41 (showing that "TRU" reported this information).

Factual Data's credit reports were accurate regarding Plaintiff's bankruptcy: this Court can take judicial notice that Plaintiff did file for Chapter 7 bankruptcy in April 2018, and that Plaintiff did receive a bankruptcy discharge in August 2018. *See In re Blue*, N.D. Ohio. Bankr. Case No. 18-12590, at ECF 1 (petition) and ECF 13 (discharge). This is just one example, but it suggests that Plaintiff's disputes were meritless.

Second, this case is not the first time Plaintiff has attempted to make a federal case out of a mortgage application that had no hope of success. In *Blue v. Fifth Third Bank*, Case No. 1:21-cv-01609, this Court dismissed Plaintiff's claims *sua sponte* after finding an "incongruity" between Plaintiff's application to proceed *in forma pauperis* and his application for a mortgage. *Id*. at ECF 3, page 2. Here, Plaintiff filed an application to proceed *in forma pauperis* in state court, in which he affirmed that he has no income and no liquid assets. Exhibit 1. It thus appears that Plaintiff's claims arose out of a mortgage application to PNC Bank that was a mere pretext and would never be granted.

# IV. CONCLUSION

Plaintiff applied to PNC Bank for a mortgage that he had no hope of getting, and this led PNC Bank to obtain two credit reports about him from Factual Data. Plaintiff then disputed the information in those credit reports, not because he could show that it was wrong, but as a basis to allege that Factual Data libeled him and violated the FCRA.

Plaintiff's allegations do not state claims for which relief may be granted. His libel claim is pre-empted by the FCRA, and his FCRA claim overlooks Factual Data's status as a "reseller" that did not provide any of its own information to PNC Bank and had no duty to change the information it obtained from other sources. For those reasons, and because Plaintiff's lawsuit arises out of a pretextual mortgage application and meritless disputes, Plaintiff's Complaint should end as his previous lawsuits in this Court have ended: in dismissal.

/s/ Jason A. Spak
Jason A. Spak
FISHERBROYLES, LLP
6360 Broad Street #5262
Pittsburgh, PA 15206
T: 412-230-8555
F: 412-774-2382
E: jason.spak@fisherbroyles.com
*Counsel for Defendant Factual Data, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, I served a true and correct copy of the foregoing **MEMORANDUM** upon Plaintiff by first class United States mail addressed to: Mario D. Blue, 4212 East 186th Street, Cleveland, OH 44122.

/s/ Jasson A. Spak
Jason A. Spak
*Counsel for Defendant Factual Data, Inc.*